IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMOS MITCHELL,                )
                              )
        Plaintiff,            )
                              )   No. 13 C 2542
    v.                        )
                              )
YRC INC.,                     )
                              )
        Defendant.            )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Judge:

Plaintiff Amos Mitchell ("Mitchell") alleges in his two-count complaint (Dkt. No. 1 ("Compl.").) that his former employer, YRC Inc. ("YRC"), violated 42 U.S.C. §1981 by terminating him on the basis of his race, African-American, (Count I) and by retaliating against him because of his complaints about racial discrimination (Count II). Pending before the court is YRC's motion for summary judgment on both counts. (Dkt. No. 34.) Also pending is Mitchell's "Motion to Strike Documents Relied Upon in Defendant's Rule 56.1 Statement of Facts and Referenced in Defendant's Memorandum in Support of Summary Judgment." (Dkt. No. 43.) For the reasons explained below, Mitchell's motion to strike is denied in its entirety and YRC's motion for summary judgment is granted.

BACKGROUND

In December 2004, Mitchell began working for YRC as a truck driver based out of the company's facility in Chicago Heights, Illinois.[1] (Dkt. No. 41 ("Def.'s Resp. Pl.'s SMF") ¶ 5.) In

---

[1] In 2009 Roadway Express and Yellow merged to form YRC. (Def.'s Resp. Pl.'s SMF ¶ 9.) For purposes of clarity, Mitchell's employer will consistently be referred to as "YRC" throughout the Memorandum Opinion and Order.

2007, Mitchell transferred to YRC's Bolingbrook, Illinois facility, where he became a combination truck driver and dock worker. (*Id.* ¶ 6.) Mitchell was a member of a union—either Teamsters Local 179 or Teamsters Local 705—throughout the duration of his employment with YRC. (*Id.* ¶ 7.)

On June 16, 2008, Mitchell filed a grievance with YRC alleging that he was discriminated against based on his race. (*Id.* ¶ 41.) Mitchell complained that he was not allowed to work when his commercial driver's license was suspended, but a white employee was permitted to work even though his commercial driver's license was suspended. (*Id.*) The record does not indicate what action, if any, YRC took to address Mitchell's grievance, but Mitchell's claim of retaliation alleged in Count II of his complaint stems from this June 2008 grievance. (Compl. at 4-5.)

Throughout Mitchell's employment, YRC maintained an absenteeism policy, which was posted in the employee break room of YRC's Bolingbrook facility. (Def.'s Resp. Pl.'s SMF ¶ 14.) This policy read: "A one hour notice must be given (unless mutually agreed to) for day-to-day absenteeism before the start of your shift. All employees must call in daily to report absences." (*Id.*) For violations of this written absenteeism policy, YRC used an unwritten progressive discipline approach that usually included four steps: (1) a warning letter, (2) a second warning letter, (3) suspension, and (4) discharge. (*Id.* ¶ 17, 18.) Warning letters and suspensions remained on an employee's record for nine months after they were issued. (*Id.* ¶ 19.) While Mitchell was employed at YRC's Bolingbrook facility, Andrew Gerrard ("Gerrard"), the Terminal Manager, was usually the decision maker for suspensions and discharges stemming from violations of the absenteeism policy. (*Id.* ¶ 21.)

On February 26, 2009, Mitchell did not appear for his shift and he failed to notify YRC at least one hour before his absence. (*Id.* ¶ 26) As a result of Mitchell's violation of the absenteeism policy, YRC issued him a warning letter on March 5, 2009. (*Id.* ¶ 26) Mitchell was issued a second warning letter on April 30, 2009, following his violation of the absenteeism policy on April 23, 2009. (*Id.* ¶ 17.) After Mitchell violated the absenteeism policy a third time on August 6, 2009, YRC issued him a three-day suspension, which was later reduced to a one-day suspension by agreement. (*Id.* ¶ 28.) Mitchell filed a grievance over his suspension, explaining that he "was not able to cover [his] shift due to the fact that [his] babysitter had an emergency as [sic] the last minute, and was not able to watch my daughter who his only seven years old." (*Id.* ¶ 30.)

On November 11, 2009, Mitchell again violated YRC's absenteeism policy. (*Id.* ¶ 31.) As a result, YRC initially discharged Mitchell. (*Id.*) Mitchell filed a grievance over the discharge, explaining that he missed work due to a doctor's appointment. (*Id.* ¶ 34.) While Gerrard would normally "recommend [termination] as soon as [employees] hit the fourth infraction," he decided to give Mitchell "an extra chance at the apple" and reduced the discharge to a three-day suspension. (*Id.* ¶ 32.)

Mitchell violated YRC's absenteeism policy for the fifth time on April 8, 2010. (*Id.* ¶ 35.) In response, YRC issued Mitchell a discharge letter on April 15, 2010. (*Id.*) Mitchell filed a grievance over his discharge, arguing that he should not be discharged because his absence should have been excused under the Family Medical Leave Act ("FMLA") or considered a vacation day. (*Id.* ¶ 37.) On June 28, 2010, Mitchell attended a grievance committee meeting to review his discharge. (*Id.* ¶ 38.) The grievance committee was composed of employer and union

representatives. (*Id.* ¶ 37.) At the meeting, Mitchell did not allege that his discharge was motivated by discrimination or retaliation. (*Id.* ¶ 39.) The committee upheld Mitchell's discharge. (*Id.* ¶ 38.)

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court does not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## ANALYSIS

YRC has moved for summary judgment on Mitchell's claim that YRC terminated him because he is African-American (Count I). YRC also contends that it is entitled to summary judgment on Mitchell's retaliation claim (Count II). The court will address each argument in turn after first addressing Mitchel's motion to strike.

I. Mitchell's Motion to Strike

Mitchell first argues that paragraphs 2-4, regarding this court's jurisdiction and venue, in YRC's Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. No. 37.) should be

stricken because those paragraphs contain legal arguments. Because Local Rule 56.1(a)(3)(B) requires a party moving for summary judgment to include statements supporting venue and jurisdiction, and Mitchell has agreed to the statements contained in paragraphs 2-4, Mitchell's argument that those paragraphs should be stricken is meritless. Similarly, Mitchell argues that paragraph 10 of should be stricken because it contains a legal argument. To the extent that either party's statements contain improper legal conclusions or legal argument, the court has disregarded such arguments in ruling on the motion for summary judgment.

Mitchell also argues that the Declaration of Kendall Calhoun should be stricken because Kendall Calhoun ("Calhoun") lacks personal knowledge as to his statement about the employment policies of YRC and its predecessors. Calhoun became a Human Resources Manager at YRC's Bolingbrook, IL facility in 2011, after Mitchell was terminated. YRC concedes, and the court agrees, that Calhoun is not qualified under Federal Rule of Evidence 602 to speak to the specific facts of Mitchell's employment and termination. However, Calhoun's four-paragraph declaration merely addresses YRC's "Equal Employment Opportunity (EEO), Anti-Harassment and Anti-Discrimination Policy." The court holds that Calhoun is competent to testify about YRC's past and present EEO practices and policies to the extent allowed by the Federal Rules of Evidence.

Mitchell also seeks to strike the Declaration of Andrew Gerrard, and in doing so appears confused about the record. Mitchell argues that Gerrard's declaration contradicts his prior deposition testimony. However, when the specific examples that Mitchell cites are placed in proper context, a review of the record reveals no contradictions that would warrant striking Gerrard's declaration. Moreover, to the extent that either party has failed to properly support

facts contained in their Local Rule 56.1 statements, the court has disregarded such unsupported facts in ruling on the motion for summary judgment. Accordingly, Mitchell's motion to strike is denied in its entirety.

II. Discriminatory Termination (Count I)

A plaintiff proceeding under Section 1981 can establish a discriminatory termination claim using either the direct method or the indirect method of proof. *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). To avoid summary judgment under the direct method, a plaintiff must "present either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated his firing." *Id.* "Speculation is no substitute for evidence at the summary judgment stage." *Bass v. Joliet Public School Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). In his Response to YRC's Motion for Summary Judgment, Mitchell does not attempt to proceed under the direct method. (*See* Dkt. No. 42 ("Def.'s Resp.") at 2-8.) Regardless, Mitchell has offered no evidence, direct or circumstantial, that would allow a reasonable jury to find that YRC was motivated by discriminatory intent when it terminated Mitchell. Accordingly, the court will evaluate Mitchell's discriminatory termination claim under indirect method, which appears to be his desired method of proof.

Under the indirect method, Mitchell bears the burden of establishing a *prima facie* case of discrimination by showing that (1) he was a member of a protected class, (2) his job performance met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated non-class members were treated more favorably than he. *Brewer*, 479 F.3d at 915. If Mitchell were to succeed in that showing, "a presumption of discrimination is raised,

and the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its action." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). "If the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual." *Id.*

Mitchell can easily satisfy elements (1) and (3) of his *prima facie* case—he is African-American and he was fired. However, YRC maintains that Mitchell has failed to establish the remaining two elements because Mitchell's performance was not satisfactory and he has failed to identify any similarly situated non-class members who were treated more favorably. Normally a court should first determine if a plaintiff has established a *prima facie* case before subjecting the employer to the pretext inquiry." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). But where, as here, "an employer has cited performance issues as the justification for its adverse action, the performance element of the *prima facie* case cannot be separated from" the pretext inquiry. *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008) (per curiam). Accordingly, the court will use pretext analysis to address whether Mitchell has presented evidence that was meeting YRC's employment expectations. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) ("We therefore focus on the question of pretext, bearing in mind that without sufficient evidence of pretext [plaintiff] cannot show that he was meeting [employer's] legitimate expectations.").

Mitchell argues that he performed his job well enough to meet YRC's legitimate expectations. It is undisputed that Gerard testified that he could not recall any complaints about Mitchell's performance while at work. (Def.'s Resp. Pl.'s SMF ¶ 52.) But YRC does not assert it terminated Mitchell due to his work performance when he actually showed up for his shifts,

rather YRC argues that it terminated Mitchell's employment as a result of progressive discipline in response to Mitchell's repeated violations of YRC's absenteeism policy. Mitchell repeatedly missed work without notifying YRC at least one hour before the start of his shift. It is undisputed that, beginning on March 5, 2009, Mitchell was issued two warning letters and twice suspended for violating YRC's absenteeism policy before he was ultimately discharged following his fifth documented violation. (*Id.* ¶ 26-37.) Absenteeism is a legitimate ground for termination. *See Bass*, 746 F.3d at 841 ("[Plaintiff's] violations of [her employer's] attendance guidelines demonstrate that she was not meeting [her employer's] legitimate expectations."); *Huang v. Continental Casualty Co.*, 754 F.3d 447, 451 (7th Cir. 2014) ("[E]mployers are entitled to determine their scheduling needs and decide whether employees are satisfying them"). Accordingly, YRC has offered a legitimate, nondiscriminatory reason for terminating Mitchell.

Mitchell maintains that YRC's stated reason for firing him—his five documented violations of YRC's absenteeism policy—was pretextual. "Pretext means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (internal quotation marks omitted). Thus, the question "is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.* To meet his burden on this point, Mitchell must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in YRC's

asserted reason "that a reasonable person could find [it] unworthy of credence." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

Mitchell first argues that the fact that YRC's progressive discipline policy for absenteeism was not reduced to writing is evidence of pretext. (Pl.'sResp. at 7.) However, the Seventh Circuit has "never required proof of a written policy to show that an employer's decision was not a pretext for discrimination." *Williams v. Airborne Exp., Inc.*, 521 F.3d 765, 769 (7th Cir. 2008). Mitchell also argues that his being terminated as a result of five absenteeism violations within a fourteen month period was "over the top." (Pl.'sResp. at 3.) But it is not the court's role to question the fairness or efficacy of an employment policy. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012) ("Perhaps their supervisors' criticisms were unfair—clearly the plaintiffs feel that they were—but there is no evidence that they were unfair *because they were motivated by race*, as Title VII forbids.") (emphasis in original).

Mitchell further argues that the he was not properly informed of the disciplinary procedures and that the procedures were applied in contradiction of the union contract. (Pl.'s Resp. at 4, 13-14.) But these arguments, even if true, would not establish pretext. Mitchell clearly believes he should not have been terminated, and he cites a bevy of reasons why he believes his termination was wrong, but he has failed to present sufficient evidence that would allow a reasonable jury to conclude that YRC's stated reason for the termination is a lie.[2]

---

[2] Mitchell comes closest to presenting circumstantial evidence of pretext when he alleges that YRC has "a history of engaging in discriminatory practices against African American employees." (Pl.'s Resp. at 10.) However, such allegations, which are peppered throughout his response, are not properly supported by facts in the record. Mitchell presents either reference to unrelated court cases or his own conclusory beliefs. *See Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 614 (7th Cir. 2001) ("We previously have upheld the entry of summary judgment against a Title VII plaintiff who has presented only his own uncorroborated, conclusory statements that similarly situated co-workers were treated differently.").

Even if Mitchell had established that he had met YRC's legitimate performance expectations, he has failed to establish the final required element of a *prima facie* case: that a similarly situated non-African-American employee was treated more favorably than he was.[3] To succeed in showing that employees are similarly situated, Mitchell's evidence must "establish that the [employer] extended leniency to similarly situated white employees who engaged in similar conduct." *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). The "analysis requires a flexible, common-sense inquiry that asks whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis." *Id.* (citations and quotation marks omitted). In a case involving allegations of discriminatory discipline, "[a] similarly situated employee need not be identical, but the plaintiff must show that the other employee dealt with the same supervisor, was subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish his conduct or the employer's treatment of him." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008) (citations, alterations, and quotation marks omitted). To survive summary judgment, Mitchell must identify a non-African-American employee who had a similar record of absenteeism but was less harshly disciplined.

---

[3] Mitchell argues that YRC waived its right to challenge the lack of similarly situated employees because it failed to produce discovery regarding this issue. (Pl.'s Resp. at 4-5.) However, a review of Mitchell's Request for Production of Documents reveals that Mitchell did not specifically request discovery on similarly situated employees. (*See* Def.'s Resp. Pl.'s SMF Ex. 1.) Moreover, Mitchell did not object to YRC's discovery responses or file a motion to compel during the discovery period. Most importantly, Mitchell misunderstands his burden—it is he who bears the burden of establishing a *prima facie* case. Because Mitchell bears the ultimate burden of persuasion, YRC may obtain summary judgment by pointing out to the court that there is an absence of evidence to support Mitchell's case. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230 (7th Cir. 2014).

Although Mitchell maintains that "he was treated differently than other similarly situated employees when it came to discipline for absences," (Pl.'s Resp. at 5.) he has not identified—much less presented admissible evidence of—even a single such employee.[4] Instead, Mitchell only contends that no white employees were terminated for absenteeism while he was employed by YRC. (*Id.*) Arguing that no white employees were terminated for absenteeism is not the same as identifying specific white employees who violated YRC's absenteeism policy but were punished more leniently. Because Mitchell does not present any evidence of white employees with a similar record of absenteeism, he has not identified anyone with the requisite "comparable set of failings." *Burks*, 464 F.3d at 751. Accordingly, Mitchell falls woefully short of his burden of putting forth sufficient evidence from which a reasonable jury could make a valid comparison between Mitchell and similarly situated white employees. The similarly situated analysis is not rigid or mechanical, *see Coleman*, 667 F.3d at 847–52, but to survive summary judgment Mitchell must do more than provide broad, unsupported allegations that YRC did not uniformly

---

[4] Mitchell does assert that two white employees, Scott Brechenbach and Steve Moletto, received better route assignments and equipment than he did. (Pl.'s Resp. at 6.) Mitchell also alleges that YRC allowed Brechenbach and Moletto to continue working when their commercial driver's licenses were suspended, but that he was not permitted to do so. (*Id.* at 6-7.) Mitchell further alleges that a white employee named Kevin received better routes despite his lack of seniority. (*Id.* at 6.) While the aforementioned allegations, if properly supported, might have been relevant to establish a discrimination claim based on an unequal terms or conditions of employment, here Mitchell's two-count complaint only alleges that YRC violated §1981 by terminating him on the basis of race and for retaliating against him because of his complaints about racial discrimination. (*see* Compl.) In his Response to YRC's Local Rule 56.1 Statement of Undisputed Material Facts, Mitchell states that "his deposition testimony and discovery have uncovered additional damages and basis," (Def.'s Resp. Pl.'s SMF ¶ 47-48.) but Mitchell did not amend his complaint to raise any additional claims. Mitchell cannot raise new claims for the first time in opposition to YRC's motion for summary judgment. *Berry v. Chicago Transit Authority*, 618 F.3d 688, 693 (7th Cir. 2010) ("[A] plaintiff may not use her brief opposing summary judgment to introduce claims not stated in her complaint-at least not without a defendant's consent, which the [defendant] did not offer.").

enforce its absenteeism policy. YRC's motion for summary judgment on Mitchell's discriminatory discharge claim is granted.

III. Retaliation (Count II)

Mitchell also alleges that YRC violated Section 1981 by terminating him in retaliation for his engaging in protected activities. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) ("[A] plaintiff may maintain a cause of action under section 1981, where the plaintiff has suffered retaliation for advocating the rights of those protected under section 1981"). At the summary judgment stage, courts generally apply the same analysis to retaliation claims brought under Section 1981 as they apply to Title VII claims. *Id.* To overcome YRC's motion for summary judgment, Mitchell may proceed under either the direct or indirect method. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010).

To establish retaliation under the direct method of proof, Mitchell must establish that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action subsequent to this protected activity; and (3) a causal connection between the two. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007). In his complaint, Mitchell claims that that he filed "series of grievances" against YRC. (Compl. ¶ 26.) However, the record reveals that Mitchell's only grievance that alleged unlawful discrimination was the grievance filed on June 16, 2008. (Def.'s Resp. Pl.'s SMF ¶ 43.) Accordingly, Mitchell's June 16, 2008 grievance is the only evidence of Mitchell engaging in a protected activity.[5] Nonetheless, because Mitchell has shown that he did

---

[5] Mitchell argues that he also engaged in protected activity when other African-American employees filed class action lawsuits against YRC. (Pl.'s Resp. at 9.) While Mitchell may have been a member of the same protected class as these other employees who sued YRC, he has presented no evidence that he participated in the lawsuits. Mitchell also claims that he engaged in protected activity when he asserted his rights under the FMLA. *Id.* This argument fails because such activity does not constituted protected activity because his FMLA complaints were not about unlawful discrimination. *See Huang*, 754 F.3d at 451.

engage in protected activity and that he was later fired, he has satisfied the first two elements of his retaliation case under the direct method.

YRC argues that Mitchell cannot show a causal connection between his June 16, 2008 grievance and his termination. Assuming that Gerrard was aware of Mitchell's June 16, 2008 grievance when he decided to terminate Mitchell, Gerrard's knowledge of the grievance is not enough to establish a causal connection under Seventh Circuit law. *See Healy v. City of Chicago*, 450 F.3d 732, 741 (7th Cir. 2006) ("[A]s a matter of law, mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive.") Moreover, the amount of time between the discrimination grievance and his termination—over two years—cuts against the existence of a causal connection. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995) (A "substantial time lapse ... is counter-evidence of any causal connection."); *Oest*, 240 F.3d at 616 (time lapse of one year constitutes counter-evidence of any causal connection between protected activity and retaliation). Retaliation claims may proceed in the face of long intervals, but only when additional circumstances demonstrate that an employer's acts might not be legitimate. *Id.* at 616. Because Mitchell has not presented sufficient direct or circumstantial evidence to prove that he was retaliated against under the direct method of proof, the court will now evaluate his retaliation claim under the indirect method of proof.

Under the indirect method, Mitchell must first show a *prima facie* case of retaliation, which requires him to produce admissible evidence that (1) he engaged in a statutorily protected activity, (2) his employer took a materially adverse action against him, (3) he was performing his job satisfactorily, and (4) he was treated worse than a similarly situated employee who did not

complain of discrimination. *Leonard v. E. Ill. Univ.,* 606 F.3d 428, 431 (7th Cir. 2010). If Mitchell were to succeed in showing a *prima facie* case, the burden then shifts to YRC to show a legitimate, nondiscriminatory reason for its actions against Mitchell. If YRC can do so, then the burden shifts back to Mitchell to show that YRC's proffered reason is pretextual. *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010).

Mitchell can easily satisfy elements (1) and (2) of a *prima facie* case—he filed a grievance alleging racial discrimination on June 18, 2008, and he was fired. However, Mitchell is unable to establish the remaining two elements. As discussed above, YRC stated a legitimate, nondiscriminatory reason why it terminated Mitchell: Mitchell's repeated violations of YRC's absenteeism policy. Mitchell has failed to show that this stated reason for his termination was pretextual. As with his discriminatory discharge claim alleged in Count I, Mitchell has failed to demonstrate that he was treated worse than a similarly situated employee who did not complain of discrimination. Mitchell did not identify another employee who had a similar record of absenteeism but was less harshly disciplined. Accordingly, Mitchell has not met his burden on summary judgment as to his retaliation claim, and YRC's motion is granted.

## CONCLUSION

For the reasons explained above, Mitchell's motion to strike [43] is denied in its entirety and YRC's motion for summary judgment [34] is granted on both Counts I and II of Mitchell's complaint. Judgment is granted in favor of defendant YRC Inc. on all of plaintiff Mitchell's claims. Civil case terminated.

ENTER:

JAMES F. HOLDERMAN
United States District Court

October 20, 2014